**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| SHERWIN G. TENNANT,  )<br>1902 Radford Drive,  )<br>Woodbridge, VA 22191,  )<br>  )<br>     Plaintiff,  )<br>  )<br>v.  )<br>  )  Civil Action No.<br>  )<br>NESTLE WATERS NORTH AMERICA,  )<br>7408 Lockport Place  )  **JURY TRIAL DEMANDED**<br>Lorton, VA 22079  )<br>  )<br>  )<br>     Defendant,  )<br>  ) | |

## COMPLAINT

COMES NOW, Plaintiff, Sherwin G. Tennant ("Mr. Tennant" or "Plaintiff"), by way of his attorney, Robert S. Webb, Esq., hereby states the following Complaint, on information and belief formed after reasonable inquiry under the circumstances, against Defendant:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Sherwin Tennant, at all relevant times is a resident of Woodbridge, Virginia.

2. Plaintiff, Sherwin Tennant was at all relevant times an employee of the Defendant, Nestle Waters North America.

3. Defendant, Nestle Waters North America at all times herein mentioned is a company licensed to do business in the Commonwealth of Virginia.

4. Defendant does business at 7408 Lockport Place, Lorton, VA, 22079.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for claims arising under federal law, i.e., Title VII of the Civil Rights Act, 42 U.S.C. § 2000e. At all times relevant to this case, Defendant has been an "employer" as defined by 42 U.S.C. § 2000e(b).

6. The Eastern District of Virginia is where the actions complained of in the present case took place.

7. Venue is vested in this Court, since the facts giving rise to this case took place in the Eastern District of Virginia.

**FACTS**

8. In October of 2005, Plaintiff began working at Nestle Walters North America as a delivery driver.

9. Plaintiff is African American.

10. Plaintiff's national origin is Guyanese.

11. Plaintiff speaks with a thick Guyanese accent.

12. At the subject Virginia location in Lorton, Virginia, Defendant divided up its driver staff into different units.

13. Each unit had a unit leader, who functioned as a unit supervisor.

14. The unit supervisor was the primary supervisor for that unit.

15. However, the supervisors of the other units had secondary supervisory authority over drivers whom they did not directly supervise as members of their unit.

16. Other unit leaders had the authority to reassign or add route stops to drivers, such as Sherwin Tennant,

17. Defendant also had a service coordinator assigned to the units.

18. Defendant had a zone operations manager over all of the units at said location.

19. Between October of 2005 and 2012, Barry Christopher was Sherwin Tennant's unit leader. Sherwin Tennant did very well under him.

20. In 2007, Sherwin Tennant promoted to Route Relief Driver by Barry Christopher.

21. In 2013, Kevin Yancy replaced Barry Christopher as Plaintiff's unit leader/ primary supervisor.

22. Shortly after the new supervisor began his tenure, in February 2013, Tennant failed to make one timely delivery because he had to deal with an emergency situation involving a family member.

23. Mike Perez, the then Zone Operations manager, demoted him due to this one incident.

24. Mr. Tennant immediately complained to the company about the unjustified demotion.

25. Said demotion was unprecedented in the seven or so years that Plaintiff had been employed by Defendant.

26. Tony LeChance, a Caucasian employee, a driver for Defendant, had similar issues and never was demoted or faced any other discipline.

27. The company rescinded the demotion.

28. In April, 2013, Sherwin Tennant received a lower review than deserved (needs improvement). His job was based on a Route Sales Driver, not a Route Relief driver.

29. In February, 2014, Sherwin Tennant during a snowstorm, accidentally hit a customer mailbox, while moving a truck.

30. In said incident, Mr. Tennant called Jose Perez, one of the two team leaders for help, but he never came.

31. Mr. Tennant had to shovel his way out of the snow banks that trapped the company truck at said location.

32. Following the mailbox incident, Mike Perez demoted Mr. Tennant because of the incident.

33. Tennant appealed his demotion, but it was upheld.

34. No Caucasian employee in a similar situation was demoted.

35. Scott Limbert was a Caucasian employee for Defendant.

36. Scott Limbert was a driver for Defendant.

37. Scott Limbert had been involved in other accidents and was not demoted.

38. In one case, Limbert had hit a parked vehicle.

39. Regarding said incident, it was not caused by inclimate weather such as a snowstorm.

40. In January, 2015, Mr. Tennant complained to Victor Tizon and Patrick Doyle about the disparate treatment he was receiving.

41. In January, 2015, Patrick Doyle badgered Sherwin Tennant about miscounting 3 sleeves of cups.

42. Mr. Tennant simply had not seen the cups on the top shelf of the truck.

43. Typically, drivers were simply told to back and deliver the missing items to the customer.

44. In this case, Doyle berated Tennant incessantly about same.

45. Doyle did not treat Caucasian drivers in this manner.

46. Upon receiving the complaint, Victor told Tennant that Patrick Doyle had a history of disparate treatment and disparate treatment complaints against Mr. Doyle made by African Americans in the Lanham, MD facility.

47. In September, 2015, Patrick Doyle and Warren Bowlan were seated across from handheld dock station. During this meeting, Patrick Doyle shot a red beam/laser at Sherwin Tennant. Mike Reed, another African American, contends that Patrick Doyle did the same thing to him.

48. In December, 2015, the drivers had gotten together to select vacation days, the purpose of which among other things, was to ascertain that there would be enough coverage for the company during these days.

49. At said meeting, Patrick Doyle belittled Mr. Tennant in front of his peers, telling him in a loud voice, "hey hey you get out."

50. There were several other Caucasian employees in the office where this occurred.

51. However due to Mr. Tennant's seniority, he should have been one of the first to pick his vacation days. As a result of Mr. Tennant being told to get out (see #49) by Mr. Doyle, Mr. Tennant left the meeting and did not receive the days off that he would have requested.

52. On April 1, 2016, Patrick Doyle singled out Mr. Tennant and spoke unprofessionally and in a disparaging manner towards Mr. Tennant, about the way he expects things from his team.

53. Patrick Doyle had singled out Mr. Tennant on a number of occasions in this manner.

54. Within days of the April 1, 2016, incident, Mr. Tennant reported the incident to his primary manager, Michael Difransisco.

55. Mr. Difransisco told Mr. Tennant not to file any complaint with (was it HR or EEOC) because he'd look into it.

56. However, Mr. DiFransisco never looked into it.

57. Mr. DiFransisco never got back to Mr. Tennant about any investigation he had completed regarding Mr. Tennant's complaint.

58. Mr. Tennant then reported the April 1, 2016 incident to Melissa Irving of the company's human resources department.

59. Following that report, John Gleason, the new Zone Operations manager, approached Mr. Tennant and stated words to the effect of, "[W]hy are you always making trouble for yourself?" you never smile and laugh."

60. On April 14, 2016, Mr. Tennant made all of his delivery stops.

61. On April 15, 2016, Tennant was falsely accused of failing to deliver all the items in a customer order.

62. The alleged items which Mr. Tennant failed to deliver amounted to one bottle of water and two packs of cups.

63. Mr. Tennant told Mr. Difransisco that he in fact made all of his stops and deliveries on April 14, 2016.

64. On April 19, 2016, Mr. Difransisco called Mr. Tennant into his office and attempted to cajole Mr. Tennant into writing a statement about delivering the missing items.

65. During said meeting, Mr. Difransisco ridiculed Plaintiff's accent.

66. On April 20, 2016, Mr. Difransisco called Mr. Tennant into his office and attempted to cajole Mr. Tennant into admitting that he had lied about delivering the missing items.

67. Mr. Tennant refused to change his statement at said meeting.

68. On April 21, 2016, Plaintiff was terminated.

69. Plaintiff won his unemployment appeal in which the company had originally argued that Mr. Tennant had provided the company with false information regarding the delivery.

70. On February 9, 2017, Mr. Tennant filed with the EEOC.

**Defendant's History of Discriminatory Behavior**

71. Patrick Doyle had more clashes and personality conflicts with African Americans than with Caucasians.

72. Sherwin Tennant was commonly called on by management to answer more questions at meetings or gatherings than any other employee.

73. At these meetings and gatherings, management (who in particular would mock his accent).

74. Sometime during 2014, there was an incident with Cardinal Bank, one of Defendant's customers, in which one of the contact people at Cardinal Bank was continuously disrespectful and derogatory to Plaintiff.

75. Plaintiff complained about the situation at Cardinal Bank and asked that said customer be taken off of Plaintiff's route and that Plaintiff would add a different customer to his route.

76. The unit leader, Warren Bowlan reassigned Mr. Tennant away from Cardinal bank due to Plaintiff's complaints.

77. However when Patrick Doyle became a unit supervisor at the Virginia location, in 2014, he reassigned Cardinal Bank back to Mr. Tennant.

78. Patrick Doyle reassigned Mr. Tennant to Cardinal Bank notwithstanding his knowledge of the difficult of that customer to Plaintiff.

79. While Defendant maintained an Anti-Harassment and Anti-Discrimination policy, it was not bona fide, as other African Americans found it useless when they complained about discrimination.

80. Plaintiff's discrimination complaints were not taken seriously by the company.

81. Plaintiff's discrimination complaints were not investigated by the company.

82. In addition, Patrick Doyle assigned Mr. Tennant additional stops from other routes.

83. As such, Mr. Tennant had to work longer hours than other drivers.

84. When Plaintiff complained about this disparate treatment, the company refused to reduce his workload.

85. After Defendant terminated Plaintiff, they replaced him with a Caucasian driver.

86. After said Caucasian driver was hired, Patrick Doyle assigned all of the extra work for which Plaintiff was responsible to Vincent Pritchett, another African American.

## COUNT I
## TITLE VII DISCRIMINATION BASED UPON RACE

87. Plaintiff hereby adopts all aforesaid paragraphs as if fully reproduced herein.

88. Plaintiff's race was a motivating factor in his termination.

89. Defendant, through its Agents, Servants, and Employees treated the Plaintiff disparately based upon his race.

90. Defendant treated Plaintiff disparately based upon race when Defendant's Agents, Servants, and Employees, provided him with additional job requirements that Caucasian drivers did not have.

91. Defendant treated Plaintiff disparately based upon race when Defendant's Agents, Servants, and Employees terminated Plaintiff.

92. The aforesaid discriminatory treatment by Defendant towards Plaintiff caused tangible harm to Plaintiff in that it affected the terms, conditions, and privileges of his employment.

93. Plaintiff was meeting and exceeding the expectations of Defendant's job requirements.

94. A causal connection exists between Defendant's discriminatory actions and Plaintiff's race.

95. Plaintiff's race was a motivating factor for Defendant's actions in forcing him to do more work than Caucasian employees.

96. Defendant's actions constituted a violation of Title VII, of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) et. seq.

97. Defendant's conduct was malicious, willful, and intentional.

98. Plaintiff has suffered substantial economic and compensatory damages as a result of Defendant's actions.

99. Plaintiff has also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, depression, insomnia, and other damages as a direct result of Defendant's acts and omissions.

100. The Defendant is a sophisticated employer who has actual knowledge of the requirements of Title VII of the Civil Rights Act of 1964, as amended.

101. Any alleged nondiscriminatory reason for Plaintiff's treatment asserted by Defendant is mere pretext for discrimination.

102. Plaintiff exhausted this claim with the EEOC (exhibit #1).

## COUNT II
## TITLE VII DISCRIMINATION BASED UPON NATIONAL ORIGIN

103. Plaintiff hereby adopts all aforesaid paragraphs as if fully reproduced herein.

104. Plaintiff's National Origin was a motivating factor in his termination.

105. Defendant, through its Agents, Servants, and Employees treated the Plaintiff disparately based upon his National Origin.

106. Defendant treated Plaintiff disparately based upon National Origin when Defendant's Agents, Servants, and Employees, provided him with additional job requirements that Caucasian drivers did not have.

107. Defendant treated Plaintiff disparately based upon National Origin when Defendant's Agents, Servants, and Employees terminated Plaintiff.

108. The aforesaid discriminatory treatment by Defendant towards Plaintiff caused tangible harm to Plaintiff in that it affected the terms, conditions, and privileges of his employment.

109. Plaintiff was meeting and exceeding the expectations of Defendant's job requirements.

110. A causal connection exists between Defendant's discriminatory actions and Plaintiff's National Origin.

111. Plaintiff's National was a motivating factor for Defendant's actions in forcing him to do more work than non-Guyanese employees.

112. Defendant's actions constituted a violation of Title VII, of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) et. seq.

113. Defendant's conduct was malicious, willful, and intentional.

114. Plaintiff has suffered substantial economic and compensatory damages as a result of Defendant's actions.

115. Plaintiff has also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, depression, insomnia, and other damages as a direct result of Defendant's acts and omissions.

116. The Defendant is a sophisticated employer who has actual knowledge of the requirements of Title VII of the Civil Rights Act of 1964, as amended.

117. Any alleged nondiscriminatory reason for Plaintiff's treatment asserted by Defendant is mere pretext for discrimination.

118.     Plaintiff submitted an EEOC questionnaire in November, 2016, which included a description of his complaints, including a national origin claim and a description for the basis of same (exhibit #2).

119.     The EEOC's investigation of Mr. Tennant's complaint included issues of national origin (Exhibit #3, page 13 of EEOC's investigative report.

## COUNT III
## DISCRIMINATION BASED UPON RACE IN VIOLATION OF 42 U.S.C. § 1981

120     .     Plaintiff hereby adopts all aforesaid paragraphs as if fully reproduced herein.

121.     Plaintiff's race was a motivating factor in his termination.

122.     Defendant, through its Agents, Servants, and Employees intentionally treated Plaintiff differently based upon his race.

123.     Defendant treated Plaintiff differently based upon race when Defendant's Agents, Servants, and Employees, provided him with additional job requirements that Caucasian drivers did not have.

124.     Defendant treated Plaintiff disparately based upon race when Defendant's Agents, Servants, and Employees terminated Plaintiff.

125.     The aforesaid discriminatory treatment by Defendant towards Plaintiff caused tangible harm to Plaintiff in that it affected the terms, conditions, and privileges of his employment.

126.     Plaintiff was meeting and exceeding the expectations of Defendant's job requirements.

127.     A causal connection exists between Defendant's discriminatory actions and Plaintiff's race.

128. Plaintiff's race was a motivating factor for Defendant's actions in forcing him to do more work than Caucasian employees.

129. Defendant's actions constituted a violation of 42 U.S.C. §1981 et. seq.

130. Defendant's conduct was malicious, willful, and intentional.

131. Plaintiff has suffered substantial economic and compensatory damages as a result of Defendant's actions.

132. Plaintiff has also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, depression, insomnia, and other damages as a direct result of Defendant's acts and omissions.

133. The Defendant is a sophisticated employer who has actual knowledge of the requirements of 42 U.S.C. §1981 et. seq.

134. Any alleged nondiscriminatory reason for Plaintiff's treatment asserted by Defendant is mere pretext for discrimination.

## COUNT IV
## DISCRIMINATION BASED UPON NATIONAL ORIGIN- ETHNIC CHARACTERISTICS IN VIOLATION OF 42 U.S.C. § 1981

135. Plaintiff hereby adopts all aforesaid paragraphs as if fully reproduced herein.

136. Plaintiff's race was a motivating factor in his termination.

137. Defendant, through its Agents, Servants, and Employees intentionally treated Plaintiff differently based upon his National Origin.

138. Defendant treated Plaintiff differently based upon National Origin when Defendant's Agents, Servants, and Employees, provided him with additional job requirements that Non-Guyanese drivers did not have.

139. Defendant treated Plaintiff disparately based upon race when Defendant's Agents, Servants, and Employees terminated Plaintiff.

140. The aforesaid discriminatory treatment by Defendant towards Plaintiff caused tangible harm to Plaintiff in that it affected the terms, conditions, and privileges of his employment.

141. Plaintiff was meeting and exceeding the expectations of Defendant's job requirements.

142. A causal connection exists between Defendant's discriminatory actions and Plaintiff's National Origin.

143. Plaintiff's National Origin was a motivating factor for Defendant's actions in forcing him to do more work than Non-Guyanese employees.

144. Defendant's actions constituted a violation of 42 U.S.C. §1981 et. seq.

145. Defendant's conduct was malicious, willful, and intentional.

146. Plaintiff has suffered substantial economic and compensatory damages as a result of Defendant's actions.

147. Plaintiff has also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, depression, insomnia, and other damages as a direct result of Defendant's acts and omissions.

148. The Defendant is a sophisticated employer who has actual knowledge of the requirements of 42 U.S.C. §1981 et. seq.

149. Any alleged nondiscriminatory reason for Plaintiff's treatment asserted by Defendant is mere pretext for discrimination.

150. Through 42 U.S.C. §1981, Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics.

151. Defendant mistreated Plaintiff not merely because he was from another country, rather Defendant mistreated Plaintiff because of those identifiable characteristics of that country, namely his accent.

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiff demands:

A. Award Plaintiff all earnings and other job benefits he would have received but for Defendant's discriminatory treatment, including, but not limited to, lost wages, leave hours, bonuses, and other benefits of employment;

B. Remove all negative reviews, restrictions, papers, from Plaintiff's personnel file;

C. Reinstate Plaintiff into his position.

D. Award Plaintiff liquidated damages in an amount to be shown at trial, including past and future economic and non-economic losses, and compensation for the extreme emotional distress and mental anguish, impairment of quality of life, and consequential losses he has suffered;

E. Award pre-judgment and post-judgment interest;

F. Award Plaintiff his attorney's fees and costs of suit;

G. Award Punitive Damages and

H. Grant such other relief as the Court deems just and proper.

                                                      Respectfully submitted,

                                                      _____/s/_____

                                                      Robert S. Webb, Esq.
                                                      Virginia Bar No. 91698
                                                      Tidal Basin Law, PLLC.
                                                      2011 Crystal Drive, Suite 400
                                                      Arlington, Va. 22202
                                                      703-682-6858

## **JURY DEMAND**

Plaintiff herein demands a jury for all issues to be tried in this case.

                                                      Respectfully submitted,

                                                     ____/s/_____

                                                      Robert S. Webb, Esq.
                                                      Virginia Bar No. 91698
                                                      Tidal Basin Law, PLLC.
                                                      2011 Crystal Drive, Suite 400
                                                      Arlington, Va. 22202
                                                      703-682-6858